BARNEY v. RECTOR, CHURCH WARDENS, AND VESTRYMEN OF
GRACE CHURCH IN CITY OF NEW YORK.  (No. 5945.)

(Supreme Court, Appellate Division, First Department.  June 12, 1914.)

RELIGIOUS SOCIETIES (§ 29*)—ACTS OF AGENT—RATIFICATION.

A church corporation contemplating certain improvements, and plaintiff having submitted certain sketches at the request of a vestryman and the rector, the latter wrote him that no one had authority to appoint an architect except the building committee, whose action would have to be ratified by the vestry before plans could be adopted or an architect appointed, to which plaintiff on August 25th replied that he understood that the work he was then doing was done on plaintiff's own responsibility at the request of a vestryman.  On October 5, 1908, the vestry resolved that the scheme for making specified improvements be authorized at a cost not to exceed $15,000.  After this plaintiff was employed by the rector to prepare plans and specifications and supervise repairs connected with other work, for which he was paid by the church corporation.  On March 8, 1909, the rector presented certain incomplete plans to the vestry, which were approved, and later the vestry authorized certain of the specified improvements, the cost to be defrayed by one desiring a memorial, and the other expenses not to exceed $10,000, covered by money contributed through the rector for that purpose.  Plaintiff then offered to do the work on conditions that were not accepted by the rector or by the church. *Held*, that for the work authorized, which included the architect's compensation for the plans, the church expressly provided that it should be at no expense, and that there was no ratification on its part, either by resolution or otherwise, of any employment of plaintiff by the rector or by the vestryman, so as to entitle plaintiff to recover for his services against the corporation.

[Ed. Note.—For other cases, see Religious Societies, Cent. Dig. §§ 196–198; Dec. Dig. § 29.*]

Appeal from Judgment on Report of Referee.

Action by J. Stewart Barney against the Rector, Church Wardens, and Vestrymen of Grace Church, in the city of New York.  From a judgment dismissing the complaint, on the report of a referee, plaintiff appeals.  Affirmed, on the opinion of the referee, which is as follows:

All negotiations and consultations about plans which the plaintiff made for the proposed improvements and alterations for Grace Church were had with Dr. Huntington, the rector, or with Mr. Stewart, treasurer of the church. On August 21st, soon after the first plans or sketches were prepared by the plaintiff, Dr. Huntington, replying to a letter in which the plaintiff had expressed his appreciation of Dr. Huntington's kindness in giving him "an opportunity of doing work for the corporation of Grace Church," informed the plaintiff that he was under a misapprehension as to the relations existing between them.  He wrote: "Neither Mr. Stewart nor I has the slightest authority to select or to appoint an architect for the work to be done at the corner of 10th Street and Broadway.  Three other architects besides yourself have, through individual members of the vestry, made suggestions, but those suggestions have been purely tentative.  No one has authority in the premises except the building committee and even its action will have to be ratified by the vestry before any plan can be said to have been adopted or any architect appointed."  To this letter the plaintiff replied on August 25th, as follows: "After your letter of August 21st, there can be no misapprehension as to the relation between us.  I understand that the work that I am now doing is not authorized by you, the building committee, or the vestry, and is done on my own responsibility, at the request of Mr. William R. Stewart."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

147 N.Y.S.—68

After this correspondence the plaintiff was inclined to retire from the work. He testified that he visited Mr. Stewart at Newport, and suggested that he retire, but that Mr. Stewart told him to "mark time." Whatever may have been the meaning of that expression, the plaintiff evidently understood it as advising him to keep on with the work. He did so and it is quite clear that in so doing he cannot be treated as having been in the employment of Grace Church. In my opinion, nothing that is proven to have subsequently occurred created any liability on the part of the defendant for the services which are the subject-matter of this action.

After the correspondence referred to, the plaintiff prepared plans and specifications and obtained estimates for the proposed work, all of which was done at the request of Dr. Huntington or Mr. Stewart. These plans included improvements to the chantry and extension of the honor room and the choral tower, a mortuary chapel and a cloister to run around the east end of the lot. They were presented to the vestry of the church at a meeting held on October 5, 1908, when the following resolution was adopted: "Resolved, that the scheme for the completion of church buildings which has to do with the chantry, the honor room and the choristers' tower, finishing them in marble, and the accompanying short cloister to the honor room be authorized, the expense to be borne by the corporation of this parish, at a cost not to exceed $15,000."

It is the contention of the learned counsel for the plaintiff that by this resolution the defendant became bound to pay the reasonable value of the plans adopted, and that there was then and thereby initiated an employment which continued until June, 1909. This argument is, in my opinion, unsound. It was conceded upon the trial that the scheme authorized by the above resolution was not proceeded with. Undoubtedly the general plan or scheme, as it is called in the resolution, was in an amended or altered form ultimately carried out, but the resolution bound the corporation in no way. No contract was authorized for the work and no mention was made of an architect, and no liability was assumed by the defendant. The plans had not been procured by the corporation or at its request, and so far as the church was concerned, the plans were Dr. Huntington's, and the scheme authorized was Dr. Huntington's scheme. It required something more than this resolution to bind the corporation to the payment of a debt which it had neither contracted nor authorized.

The contention of the plaintiff is also inconsistent with the complaint. The contract which is made the basis of the first cause of action is alleged to have been made on or about November 14, 1908, and the services which are the basis of the second cause of action are alleged to have been rendered between November 14, 1908, and June 3, 1909. These allegations exclude any services rendered prior to October 5, 1908 and the resolution of that date created no liability for services rendered after the date of its passage. After October 5, 1908, the plaintiff was employed by Dr. Huntington to prepare plans and specifications and supervise repairs to the wall of the choral tower. For this work he was paid by the defendant, and there is no proof that the plaintiff was employed in advance by a vote of the vestry of the church, or that authority was given by the vestry to Dr. Huntington to employ the plaintiff. No inference can be drawn from the payment by the church for this work that Dr. Huntington had general authority to employ an architect, or authority to employ the plaintiff. The defendant, of course, could pay a bill of the architect in reference to the church; and, while in so doing it ratified Dr. Huntington's acts in employing the plaintiff to make plans for that work, it cannot be inferred from a single instance of that character that the defendant had conferred general authority upon Dr. Huntington to employ an architect at the defendant's expense in other matters. Especially is this so in view of the information which Dr. Huntington had communicated to the plaintiff already referred to.

Plans were also prepared for a wall along the east side of the lot, marking a playground, and the work carried out under the supervision of the plaintiff, which was also paid for by the defendant. But this work was specifically authorized by a resolution of the vestry of March 8, 1909. Prior to March 8, 1909, the plaintiff at Dr. Huntington's request, had done considerable work

with reference to changes and additions to the plans which had been approved by the resolution of October 5, 1908, and which matters are the subject of this action. In connection with these changes the plaintiff had consulted with Dr. Huntington and Mr. Stewart, and on March 8, 1909, the plans in an incomplete state were presented to the vestry by Dr. Huntington. On that day the vestry passed the following resolution: "The rector laid before the vestry án architect's sketch of a proposed wall and playground, which had already been examined by the building committee; whereupon, on motion duly seconded, it was resolved, that the playground plan as presented by the rector in accordance with drawings by Mr. Barney be and hereby is approved; and that the rector is authorized to put the plan into execution provided that the cost of the same shall not be a charge against the corporation. Resolved, that the thanks of the vestry be extended to the rector for having secured this gift and through him to the generous donor. The rector then showed further plans for the improvement of the property on the corner of Broadway and Tenth Street; and on motion by Mr. Parish, duly seconded, it was resolved, that we adopt in general, this scheme for the ornamentation of the southside of the buildings, the consideration of details being left for the future."

It is the final resolution and the recital preceding it which has reference to the matters involved in this action. The passage of this resolution was communicated to the plaintiff by Mr. Stewart, and thereafter, in consultation with Dr. Huntington and at his request, considerable work was done upon the plans towards their completion.

In reference to a proposed porch on the south side of the church, Dr. Huntington disagreed with the plaintiff, and consulted another architect. The result of Dr. Huntington's activities was the passage of a resolution on June 1st, which was as follows: "On motion, duly seconded, the following resolution was adopted: Resolved, that the rector be empowered to contract with Mr. J. Stewart Barney, architect, and Messrs. Barr, Thaw & Fraser, stoneworkers, to finish the exterior of the honor room in marble in accordance with plans and specifications to be furnished by Mr. Barney; it being understood that the work is to be done at no expense to the vestry, but from funds now in the hands of the rector, contributed by friends of the late Mrs. Richard M. Hunt, whose memorial the marble work in question is to become. On motion, duly seconded, it was resolved, that the rector be empowered to contract with Mr. W. W. Renwick, architect, and with Messrs. Barr, Thaw & Fraser, stoneworkers, or others, to build a southerly porch to the chantry, and to make sundry other changes and improvements in said building, in accordance with plans this day submitted by the said Renwick; it being understood that the cost of the porch to an amount not exceeding ten thousand dollars ($10,000) is to be borne by Mr. George Crawford Clark of this corporation, who desires the same to be a memorial to his deceased daughter Julia; and it being also understood that other expenses connected with the improvements, to an amount not exceeding ten thousand dollars ($10,000) shall be covered by moneys contributed through the rector for this purpose and now in his hands." On the same day Dr. Huntington wrote the plaintiff the following letter: "My dear Mr. Barney: The vestry, at a formal meeting this afternoon, voted to approve your plan for the plating of the honor room with marble, and empowered me to contract with you and Messrs. Barr, Thaw & Fraser for the work, on the terms already named by that firm. In this case also, as in the case of the wall and playground, it was voted that the vestry as such should be put to no expense, but that the charges should be met out of funds in the hands of the rector.  *  *  *  The work to be done on the chantry has been assigned to another architect, the cost in that case being divided between the rector and the parish treasury.  *  *  * "

Prior to the passage of the resolution of June 1st, the question of Dr. Huntington's authority to employ the plaintiff in behalf of the church had again been raised. On April 20, 1909, Dr. Huntington, by letter advised the plaintiff that with the approval of the vestry of the church he had consulted another architect in order to get his thought in reference to the south porch adequately expressed. Upon receipt of this letter, the plaintiff wrote to Dr. Huntington, as follows: "Referring to the first part of your letter, as your

action in resorting to another architect was 'with the approval of the vestry of Grace Church,' I beg that you will allow me the privilege of taking this matter up with you and your vestry. In justice to myself I must state that I was under the impression that I was working under absolutely final orders from the vestry of Grace Church, which considered all of the work for which I have submitted drawings, details and estimates, and that I was in the process of studying the details of the work to the point where it would meet with your entire satisfaction; and the drawing which I submitted to you was simply one of the moves in the process of arriving at a final solution of these details." On April 29th Dr. Huntington replied as follows: "You now write me that you have been under the impression that you were working 'under absolutely final orders from the vestry of Grace Church' and that the drawing submitted by you as the embodiment of my wishes in the matter of a porch 'was simply one of the moves in a process of arriving at a final solution' of details. My belief is that in this impression you are mistaken, and that the records will show that the only work to which the corporation of Grace Church has committed itself, in connection with your office, is that of constructing the playground for the choristers at the east end of the Bakery property."

After the passage of the resolution of June 1st, the plaintiff offered to do the work upon conditions which were not accepted by Dr. Huntington or the church. No contract was made with him by Dr. Huntington pursuant to that resolution, and the work authorized was completed under the supervision of Mr. Renwick.

The facts which I have referred to make it clear that the plaintiff never had an express contract with the defendant in reference to matters involved in this action. All his negotiations and consultations were with Dr. Huntington and Mr. Stewart, and the question is presented whether Dr. Huntington's acts were, by the resolutions referred to and by the use by the defendant of the plans prepared by the plaintiff, ratified by the defendant, and whether the defendant is liable for the reasonable value of the plaintiff's services.

I have already referred to the resolution of October 5, 1908, and that such resolution was not treated by the parties as a ratification of anything done prior to that date.

The resolution of March 8th and the resolution of June 1st must be read together. The first adopted the scheme for the ornamentation of the south side of the building in general. The details were to be left to the future. The second authorized a contract to be made for the work. The resolution of March 8th bound the corporation in no way at all. It adopted a plan which had been procured by Dr. Huntington. In approving it upon its presentation by him, the corporation did not become liable to the architect who had prepared it. The liability to the architect, if any, was an affair of Dr. Huntington's and Mr. Stewart. There was no obligation on the part of the corporation to proceed with the work, and it was free to drop the matter entirely if it desired, as I think it would probably have done if it had been necessary to pay for the work out of the funds of the church. The resolution of June 1st of itself created no contract and no liability. It authorized a contract which was never made, and it authorized it upon terms which expressly excluded liability on the part of the corporation.

I am unable to perceive how, if the contract had been made with the plaintiff by Dr. Huntington as authorized by the resolution of June 1st, the plaintiff could have enforced any claim for services against the defendant. It was expressly provided that the work was to be done at no expense to the vestry, but from funds "now in the hands of the rector contributed," etc. The legal effect of this resolution, both as to work in accordance with the plaintiff's plans and the work to be supervised by Mr. Renwick, was to permit the rector to expend the funds then in his hands upon the church property in accordance with the plans which the vestry had approved, and in accordance with the wishes of the donors of the funds. But for the work authorized, which clearly included the architect's compensation for the plans, the church expressly provided that it was to be at no expense.

In my opinion, therefore, the resolution referred to created no liability upon the part of the defendant.

I agree with the learned counsel for the plaintiff that the rules applicable to ratification and acquiescence apply to religious corporations in the same manner as to civil corporations; I have examined and carefully considered the cases referred to upon his brief. But the case at bar is clearly distinguished from the cases cited by the plaintiff by the fact that information was given to the plaintiff by Dr. Huntington at the beginning of the plaintiff's work; that no one had authority to employ an architect on behalf of the defendant except the vestry, and the vestry in this case, by the resolution adopting plans and authorizing the work, made such approval and authorization conditional upon the fact that the work was to be done at no expense to the church.

The defendant did nothing to create an apparent authority in Dr. Huntington or Mr. Stewart, and the letter of Dr. Huntington to the plaintiff in August, 1908, informed him definitely that neither he nor Mr. Stewart had any authority as agents to bind the church, and that no one had authority to employ an architect except the vestry. This information qualified and limited everything which the plaintiff thereafter did at the request of Dr. Huntington and Mr. Stewart. There is in the testimony no fact whatever which justified the plaintiff's assumption expressed in his letter of April 21, 1909, that he "was working under absolutely final orders from the vestry of Grace Church.'

Again, it is apparent that in all the resolutions of the vestry it intended to incur only a limited liability on the part of the church. The October resolution limited the expense to $15,000. The work then contemplated was abandoned. The other resolutions of March and June provided expressly that the cost of the work authorized should not be a charge against the corporation.

The plaintiff undoubtedly rendered valuable services, of which the church has had the benefit, but unless he was employed by the church or some one duly authorized by it, he must look for his compensation to those who employed him.

There was no impropriety on the part of Dr. Huntington or Mr. Stewart in obtaining plans from an architect for the improvement of the church and donating them to the church and in accepting them and in carrying out the architect's plans with funds contributed by other friends of the church, the corporation created no liability against itself.

The complaint must be dismissed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

N. A. Smyth, of New York City, for appellant.
A. G. Fox, of New York City, for respondent.

PER CURIAM. Judgment affirmed with costs, on the opinion of Charles F. Brown, Referee. Order filed.

---

SHERMAN v. EINHORN et al. (No. 5962.)

(Supreme Court, Appellate Division, First Department. June 12, 1914.)

1. DISCOVERY (§ 41*)—PARTIES—EXAMINATION BEFORE TRIAL—SCOPE.

Where, in a suit for breach of an employment contract, plaintiff alleged that he was employed at a salary of $50 per week, plus 5 per cent. commission on all sales and reorders procured by him directly or indirectly in certain cities and their vicinity, a motion for defendant's examination before trial, concerning orders and sales of merchandise accepted by defendants from customers in cities referred to and their vicinity, should have been limited to sales or orders in which plaintiff was interested or those made or procured by him directly or indirectly.

[Ed. Note.—For other cases, see Discovery, Cent. Dig. § 54; Dec. Dig. § 41.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes